## MORRIS *et al. v.* ROGERS.

1. This court will not consider a ground in a motion for a new trial, alleging error in the admission of testimony, when it does not appear what was the ground of objection made at the time the testimony was admitted.
2. Where a judgment was obtained against A. and B. as joint defendants, and, in consequence of a representation made by B. that a certain tract of land belonged to A., the plaintiff had such land levied on and sold as the property of A.; and where it further appeared that A. had the legal title to the land, but B. had a secret equitable interest therein which was not disclosed to the plaintiff: *Held*, that the purchaser at such sale acquired a title to such land superior to B.'s equitable interest.
3. One who is not in possession of land at the time of a sheriff's sale, and has no interest in the land as owner, or as being in privity with, or a creditor of, the owner, but who is a mere stranger to the title, has no right to attack the sale because of excessiveness in the levy.
4. There being no error of law committed, and the evidence being sufficient to sustain the verdict, the court did not err in overruling the motion for a new trial.

Argued May 17, — Decided June 3, 1898.

Action for breach of warranty. Before Judge Reid. City court of Atlanta. November term, 1897.

*Simmons & Corrigan,* for plaintiffs in error.
*Hunt & Golightly* and *T. P. Westmoreland,* contra.

LEWIS, J. J. H. and L. V. Rogers brought suit against J. N. Smith and D. P. Morris, for breach of warranty in a deed executed by defendants to plaintiffs on January 31, 1888, conveying a certain lot of land in the city of Atlanta. The petition alleged, in substance, that the plaintiffs had been lawfully evicted from said land by the sheriff of Fulton county, by virtue of a sale by said sheriff under a final process against J. M. Harwell and Robert Reese, the property having been sold as the property of Harwell and Reese; and that to regain possession and to get such title as defendants warranted plaintiffs, they were forced to buy in the outstanding title from John C. Hendrix, the purchaser at the sheriff's sale, who had been put in possession of the property by the sheriff, for which title they paid the sum of $325.00 on November 27, 1890. The consideration of the deed from defendants to plaintiffs was $265.00. The petition further alleged that the covenants in the deed sued upon were broken; for that the property described in said deed was subject to a judgment in favor of J. B. Redwine against Harwell, the true owner of said premises, and Reese, the tenant then in possession, rendered February 1, 1886, in the justice's court of Fulton county, Ga.; that execution upon said judgment was levied on the land; that plaintiffs and their tenants were evicted therefrom, and by virtue thereof the covenants in their deed for quiet and peaceable possession have been broken. From the testimony in the record it appears, that the lot of land in question was originally owned by the Bank of the State of Georgia; that about the year 1878 or 1879 Robert Reese went into possession under a bond for titles from the bank. It seems that Reese afterwards became indebted to Redwine, and, to secure this indebtedness, executed to Redwine a mortgage on the land. When Redwine undertook to collect the money on the mortgage, Reese stated to him that the land did not belong to him, and never had; and thereupon Redwine took out a warrant for him. Harwell then indorsed Reese's note, and the warrant was dismissed. To secure Harwell, Reese transferred his bond for titles from the bank to him; and Harwell afterwards procured a deed to the land from the bank. This deed was delivered by Harwell to Redwine, who also took

a mortgage from Harwell on the land to secure the Reese note which Harwell had indorsed. Redwine testified that after the indorsement of this note by Harwell, he understood from both Reese and Harwell that Reese was simply holding the land under Harwell, and that Reese claimed that it was Harwell's property. Redwine reduced the note against Harwell and Reese to judgment in the justice's court, obtaining a joint judgment against both defendants; and upon the faith of the previous representations made by the defendants to him as to the ownership of the property, and the fact that the outstanding legal title was in Harwell, he had execution issued and levied upon the land as the property of the defendant Harwell. The land was sold and bought in by Hendrix, and the sheriff afterwards put Hendrix in possession of the premises, evicting therefrom the tenants of the plaintiffs in this case. There was testimony to the effect that Reese had paid nearly all the purchase-money for the land to the bank, and he transferred his bond for titles to Harwell, leaving only a balance of about $40.00 due. It did not appear, however, that Redwine, or the purchaser at the sheriff's sale, had any knowledge or notice of this equity which Reese had in the land. After this eviction of the plaintiffs from the premises, they bought the outstanding title of Hendrix by paying him therefor the amount of $325.00. They then brought this suit for breach of warranty. It does not appear that the defendants in this case had any title whatever when they made their warranty-deed to plaintiffs. The jury returned a verdict for the plaintiff for $265.00. The defendants made a motion for a new trial, which was overruled, and they excepted.

1. There are several grounds in defendants' motion for a new trial, complaining of errors committed by the court in admitting certain testimony before the jury. In some of these grounds it does not even appear that any objection was made to the admissibility of the evidence at the time it was offered, and in none does it appear what the objection was. Under the repeated rulings of this court, we can not consider these grounds of the motion.

2. The plaintiffs in error complain, in their motion for a new trial, of the following charge of the court to the jury: "If Reese

put the title in Harwell by his direction — that is put the actual legal paper title in Harwell, and let it stay there, and told Redwine, the plaintiff in fi. fa., that it was Harwell's property, and that he was holding possession for Harwell; and if Redwine, pursuant to that, had a levy made upon the property, and sold the property, it would be, as against Reese and the rights of the plaintiff in fi. fa., Harwell's property, and any purchaser at the sheriff's sale would get a perfect title so far as Reese's claim is concerned." We can see no error in this charge of the court, in the light of the facts in this case. Redwine had obtained a judgment both against Harwell and Reese; and, of course, it could have been enforced upon the property of either one of the defendants. Acting not only upon the fact that the legal title to the property was in Harwell, but also upon the representation that had been made to him by Reese to the effect that he had no interest in the property, but that the same belonged to Harwell, he had it levied upon as the property of Harwell. Unquestionably such a representation would estop Reese from afterwards asserting any interest in the property sold. Having transferred his bond for titles to Harwell, who thereupon procured a deed from the real owner of the property, Reese had no further interest in it save that of a secret equity. Of this equity neither the plaintiff in fi. fa. nor the purchaser at the sheriff's sale had any knowledge, and the most diligent search by them of the records of titles to property could not have disclosed the fact that Reese had any interest in it at the time of the sale. Besides this, Reese, being one of the defendants in fi. fa., certainly had the right to consent to the entire fee in the property being sold under a levy upon it as the property of Harwell, and by such consent whatever interest he (Reese) had therein necessarily went to the purchaser. We think, therefore, that under the facts of this case, when Hendrix bought this property at sheriff's sale, he acquired all the title and interest which both of the defendants had in the premises.

3. Complaint is made in the motion for a new trial, that the court refused to submit the question to the jury as to whether the levy was or was not excessive. There was evidence to show that the property was much more valuable than the amount

due on the execution, and that it could have been divided; but on account of its being a narrow lot, and the location of a house thereon, we think the preponderance of evidence indicated that there could be no division without manifest injury to the property. Even if the defendants in this case had a right to attack the sale on the ground of excessiveness of the levy, we do not think the proof submitted would have authorized the jury in setting aside the sale on this account. But the defendants did not show any ownership in the property, or any privity with any former owner thereof. For aught that appears in the record, they were mere strangers to the title. Under the ruling of this court in the case of *McArthur* v. *Peacock*, 93 *Ga.* 715, they had no right to attack the sale on account of excessiveness in the levy.

4. The plaintiffs not only showed in this case an outstanding title as against their vendors, but also showed that since their purchase the land had been sold by the sheriff under an execution against a third person, and possession by the defendant in execution after the rendition of the judgment, and that they had surrendered to the purchaser at sheriff's sale. This certainly makes a prima facie case in their favor, and casts the onus probandi upon their warrantors. *Taylor* v. *Stewart*, 54 *Ga.* 81. This prima facie case the defendants utterly failed to overcome. We think, therefore, the verdict of the jury amply sustained by the testimony, and that the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring.*